# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## CENTRAL DIVISION AT LEXINGTON

| | | |
|---|---|---|
| **MARK CARTER** | : | Case No. _____ |
| 316 Daintree Drive | : | |
| Richmond, Kentucky 40475 | : | Judge _____ |
| | : | |
| PLAINTIFF, | : | |
| | : | |
| v. | : | |
| | : | |
| **INFILTRATOR WATER** | : | **COMPLAINT WITH JURY** |
| **TECHNOLOGIES, LLC** | : | **DEMAND** |
| 2600 Corporate Drive | : | |
| Winchester, KY 40391 | : | |
| | : | |

For his Complaint against Defendant Infiltrator Water Technologies, LLC., Plaintiff Mark Carter states as follows:

### PARTIES AND JURISDICTION

1. Plaintiff Mark Carter ("Carter") is an individual residing in Madison County, Kentucky. At all times relevant, Plaintiff Carter was an employee of Infiltrator Water Technologies, LLC (hereinafter "Infiltrator") as that term is defined in 42 U.S.C § 12111 and Ky. Rev. Stat. 344.450.

2. Defendant Infiltrator is a Kentucky limited liability company conducting business in Winchester, Kentucky. Infiltrator is an employer within the meaning of 42 U.S.C § 12111 and Ky. Rev. Stat. 344.450.

3. This Court has jurisdiction over Counts I, II, and III pursuant to 28 U.S.C. § 1331 because the claims are based on federal law.

4. This Court has supplemental jurisdiction over Counts IV, V, and VI pursuant to 28 U.S.C. § 1367 because the state claims are so related to the federal claims in Counts I. II, and III that they form part of the same case or controversy.

5. Venue is appropriate in the Eastern District of Kentucky pursuant to 28 U.S.C. § 1367 because a substantial amount of the conduct giving rise to Mr. Carter's claims occurred with the Eastern District of Kentucky.

6. Plaintiff Carter filed a Charge of Discrimination with the Equal Employment Opportunity Commission on March 28, 2017. On August 11, 2017, the Equal Employment Opportunity Commission issued a Notice of Right to Sue, authorizing Carter to pursue his claims under the Americans with Disabilities Act.

## FACTUAL ALLEGATIONS

7. Mr. Carter began his employment with Infiltrator on May 26, 2016. He held the position of Environmental Health and Safety Manager at Defendant's Winchester, Kentucky location. He reported to Roy Moore, Infiltrator's CEO.

8. Mr. Carter was diagnosed with a disability August 17, 2016, when he suffered a staph infection in the bone of his foot, requiring hospitalization.

9. On August 20, 2016, he underwent surgery to amputate a portion of his left foot. Following surgery, Mr. Carter had to relearn how to walk.

10. Mr. Carter's disability substantially limits numerous major life activities, including walking, standing, lifting, bending, and climbing.

11. Infiltrator had knowledge of Mr. Carter's disability. He was required to be off of work during his hospitalization and recovery.

12. Mr. Carter was seen by the Lexington Foot and Ankle Center for follow-up after surgery on September 20, 2016. His doctor indicted that he could return to work on September 26, 2016, with the restriction that he not bear weight on his left foot.

13. However, Infiltrator's Human Resources representative Carolyn Wiley told Mr. Carter they wanted him to be completely recovered before he returned, and they did not allow him to return to work on September 26, 2016.

14. Mr. Carter was seen again by the Lexington Foot and Ankle Center on October 4, 2016. His doctor indicated that he would be able to return to work on October 10, 2016 with no restrictions.

15. When he called Infiltrator to say he was able to return to work, Infiltrator's Ms. Wiley asked if he was "good to go." Mr. Carter said "yes," and volunteered that he had orthotics in his shoes. Ms. Wiley told Mr. Carter that he should wait a couple of more weeks, until October 25, to return to work, and she would not permit him to return until then.

16. After Mr. Carter returned to work, Infiltrator actually modified Mr. Carter's job responsibilities to include work that was more physically demanding and difficult for someone with Mr. Carter's disability. This included four to six hours a day of walking around buildings and climbing ladders.

17. As a result, Mr. Carter repeatedly slipped and fell due to the challenges of performing these new requirements with his disability.

18. Mr. Carter underwent a second surgery related to his disability on December 22, 2016, and was off work recovering until December 27, 2016.

19. On January 19, 2017, Infiltrator suddenly and without notice terminated Mr. Carter's employment during a meeting with Vice President of Operations Ron Brochu, and Human Resource Manager Carolyn Wiley.

## COUNT I
### Disability Discrimination—42 U.S.C. §12112

20. Mr. Carter repeats the allegations in paragraphs 1 through 20 of the Complaint as if fully restated herein.

21. Mr. Carter suffers from physical impairments that substantially limit several major life activities, including walking, standing, lifting, bending, and climbing.

22. Infiltrator had knowledge of Mr. Carter's disabilities. Infiltrator also regarded him as disabled.

23. Mr. Carter was qualified for his position with or without a reasonable accommodation.

24. Infiltrator discriminated against Mr. Carter when it terminated him. Mr. Carter was subject to an adverse employment decision because he is disabled and Defendant regarded him as disabled.

25. As a direct and proximate result of Infiltrator's discrimination, Mr. Carter has incurred damages, including lost wages, benefits, and other compensation. He also suffered emotional distress as a result of Infiltrator's illegal actions.

26. Infiltrator acted with malice and a reckless indifference to Mr. Carter's federally protected rights.

## COUNT II
### Failure to Accommodate—42 U.S.C. §12112

27. Mr. Carter repeats the allegations in paragraphs 1 through 27 of the Complaint as if fully restated herein.

28. Mr. Carter suffers from physical impairments that substantially limit several major life activities, including walking, standing, lifting, bending, and climbing.

29. Infiltrator had knowledge of Mr. Carter's disabilities. Infiltrator also regarded him as disabled.

30. Mr. Carter requested reasonable accommodations for his disabilities. He requested that he not be made to climb over railroad tracks or on ladders.

31. Infiltrator denied Mr. Carter a reasonable accommodation. After requesting accommodations Infiltrator actually modified Mr. Carter's job responsibilities to include work that was more physically demanding and difficult for someone with Mr. Carter's disability, including four to six hours a day of walking around buildings and climbing ladders.

32. As a direct and proximate result of Infiltrator's discrimination, Mr. Carter has incurred damages, including lost wages, benefits, and other compensation. He also suffered emotional distress as a result of Infiltrator's illegal actions.

33. Infiltrator acted with malice and a reckless indifference to Mr. Carter's federally protected rights.

## COUNT III
### Retaliation—42 U.S.C. §12112

34. Mr. Carter repeats the allegations in paragraphs 1 through 33 of the Complaint as if fully restated herein.

35. Mr. Carter suffers from physical impairments that substantially limit several major life activities, including walking, standing, lifting, bending, and climbing.

36. Infiltrator had knowledge of Mr. Carter's disabilities. Infiltrator also regarded him as disabled.

37. Mr. Carter engaged in protected activity when he requested reasonable accommodation for his disability.

38. Infiltrator retaliated against Mr. Carter by modifying his job responsibilities to include work that was more physically demanding and difficult for someone with Mr. Carter's disability, including four to six hours a day of walking around buildings and climbing ladder and ultimately by terminating him.

39. As a direct and proximate result of Infiltrator's discrimination, Mr. Carter has incurred damages, including lost wages, benefits, and other compensation. He also suffered emotional distress as a result of Infiltrator's illegal actions.

40. Infiltrator acted with malice and a reckless indifference to Mr. Carter's federally protected rights.

## COUNT IV
### Disability Discrimination—Ky. Rev. Stat. 344.450

41. Mr. Carter repeats the allegations in paragraphs 1 through 40 of the Complaint as if fully restated herein.

42. Mr. Carter suffers from physical impairments that substantially limit several major life activities, including walking, standing, lifting, bending, and climbing.

43. Infiltrator had knowledge of Mr. Carter's disabilities. Infiltrator also regarded him as disabled.

44. Mr. Carter was qualified for his position with or without a reasonable accommodation.

45. Infiltrator discriminated against Mr. Carter when it terminated him. Mr. Carter was subject to an adverse employment decision because he is disabled and Defendant regarded him as disabled.

46. As a direct and proximate result of Infiltrator's discrimination, Mr. Carter has incurred damages, including lost wages, benefits, and other compensation. He also suffered emotional distress as a result of Infiltrator's illegal actions.

47. Infiltrator acted with malice and a reckless indifference to Mr. Carter's federally protected rights.

## COUNT V
## Failure to Accommodate-- Ky. Rev. Stat. 344.450

48. Mr. Carter repeats the allegations in paragraphs 1 through 47 of the Complaint as if fully restated herein.

49. Mr. Carter suffers from physical impairments that substantially limit several major life activities, including walking, standing, lifting, bending, and climbing.

50. Infiltrator had knowledge of Mr. Carter's disabilities. Infiltrator also regarded him as disabled.

51. Mr. Carter requested reasonable accommodations for his disabilities. He requested that he not be made to climb over railroad tracks or on ladders.

52. Infiltrator denied Mr. Carter a reasonable accommodation. After requesting accommodations Infiltrator actually modified Mr. Carter's job responsibilities to include work that was more physically demanding and difficult for someone with Mr. Carter's disability, including four to six hours a day of walking around buildings and climbing ladders.

53. As a direct and proximate result of Infiltrator's discrimination, Mr. Carter has incurred damages, including lost wages, benefits, and other compensation. He also suffered emotional distress as a result of Infiltrator's illegal actions.

54. Infiltrator acted with malice and a reckless indifference to Mr. Carter's federally protected rights.

## COUNT VI
### Retaliation—Ky. Rev. Stat. 344.450

55. Mr. Carter repeats the allegations in paragraphs 1 through 54 of the Complaint as if fully restated herein.

56. Mr. Carter suffers from physical impairments that substantially limit several major life activities, including walking, standing, lifting, bending, and climbing.

57. Infiltrator had knowledge of Mr. Carter's disabilities. Infiltrator also regarded him as disabled.

58. Mr. Carter engaged in protected activity when he requested reasonable accommodation for his disability.

59. Infiltrator retaliated against Mr. Carter by modifying his job responsibilities to include work that was more physically demanding and difficult for someone with Mr. Carter's disability, including four to six hours a day of walking around buildings and climbing ladder and ultimately by terminating him.

60. As a direct and proximate result of Infiltrator's discrimination, Mr. Carter has incurred damages, including lost wages, benefits, and other compensation. He also suffered emotional distress as a result of Infiltrator's illegal actions.

61. Infiltrator acted with malice and a reckless indifference to Mr. Carter's federally protected rights.

**WHEREFORE,** Plaintiff Mark Carter demands judgment against Defendant Infiltrator Water Technologies as follows:

1. An award of back pay in the amount he would have earned from the date of his wrongful termination until the date of judgment, including wages, benefits, and prejudgment interest;

2. An equal amount in liquidated damages;

3. Reinstatement, or if reinstatement is not deemed appropriate, an award of front pay equal to the amount he would have earned from the date of judgment forward;

4. An award of compensatory damages to compensate Plaintiff Carter for the emotional distress and other damages he has suffered as a result of Infiltrator's wrongful actions;

5. An award of punitive damages;

6. An award of attorney fees and costs; and

7. An award of all other legal and equitable relief to which he may be entitled.

## Jury Demand

Plaintiff, by and through counsel, demands a trial by jury on all matters so triable.

Respectfully submitted,

/s/ Robert A. Klingler
Robert A. Klingler (87286)
ROBERT A. KLINGLER CO., L.P.A.
525 Vine Street, Suite 2320
Cincinnati, OH  45202-3133
Telephone:  (513) 665-9500
Facsimile:  (513) 621-3240
Email:  rak@klinglerlaw.com
*Attorney for Plaintiff Mark Carter*